# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                          Plaintiff,

v.                                                    Case No. 04-CR-285-20-JPS

JARVIS KING,

                                                      **ORDER**

                          Defendant.

## 1.    INTRODUCTION

In July 2006, Defendant Jarvis King was tried by a jury and adjudged guilty of conspiracy to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 826, and 851, and 18 U.S.C. § 2, for his involvement in "a loosely organized, long-running drug-trafficking ring" known as the Cherry Street Mob. ECF Nos. 849, 852, 1079; *see also United States v. James*, 540 F.3d 702, 704 (7th Cir. 2008). The jury made affirmative findings as to the drug quantities, answering "yes" as to whether the offense involved 5 kilograms or more of cocaine and "yes" as to whether the offense involved 50 grams or more of cocaine base. ECF No. 852. In May 2007, the Court sentenced Defendant to a total term of life imprisonment, which was a statutory mandatory minimum at the time because Defendant had two qualifying prior felony drug offenses, to be followed by 10 years' supervised release. ECF Nos. 1078, 1079. Defendant has now served approximately 17 years of his sentence. ECF No. 1625-1 at 8; ECF No. 1632 at 1.

On May 24, 2022, Defendant filed a combined motion for a reduction in his sentence and for compassionate release pursuant to the First Step Act,

along with a motion to seal the same. ECF Nos. 1624, 1625.[1] The Court set a briefing schedule on the motion and, following an extension of time, the motion is now fully briefed. ECF Nos. 1625, 1632, 1635. For the reasons set forth herein, the Court will grant the motion and reduce Defendant's sentence to a total term of 288 months' imprisonment (of which he has already served approximately 17 years) to be followed by five years' supervised release.

## 2.     LEGAL STANDARD AND PROCEDURAL BACKGROUND

### 2.1     Section 404

In 2010, Congress passed the Fair Sentencing Act. Pub. L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act was intended to reduce the disparity between sentences for powder and crack cocaine. Consequently, the Fair Sentencing Act greatly increased the quantities of crack cocaine required to trigger progressively harsher statutory penalties. Specifically,

> The [Fair Sentencing] Act increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5–year minimum and from 50 grams to 280 grams in respect to the 10–year minimum (while leaving powder at 500 grams and 5,000 grams respectively). § 2(a), 124 Stat. 2372. The change had the effect of lowering the 100–to–1 crack-to-powder ratio to 18–to–1. (The [Fair Sentencing] Act also eliminated the 5–year mandatory minimum for simple possession of crack. § 3, 124 Stat. 2372.)

*Dorsey v. United States*, 567 U.S. 260, 269 (2012).

---

[1]The Court will grant Defendant's motion to seal his moving and reply briefs, as they contain confidential information. ECF No. 1624. The Court will further grant the Government's motion to seal its opposition brief, as it also contains confidential information. ECF No. 1631.

In 2018, Congress passed the First Step Act of 2018, § 404, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("Section 404"), which made it possible for already-sentenced defendants to request that the provisions of the Fair Sentencing Act be applied to their case retroactively. *See also* 18 U.S.C. § 3582(c)(1)(B) (courts cannot modify a term of imprisonment once imposed except where expressly permitted by statute). Section 404(b) provides that:

> A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

The inquiry under Section 404(b) is two-step: "First, a judge considering a motion for a reduced sentence under the First Step Act is faced with the question of whether the defendant is eligible for a sentence reduction. If the defendant is eligible, then the court faces the question of whether it should reduce the sentence." *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020).

As to the first prong of the Court's inquiry under Section 404(b), the parties agree that Defendant is eligible for a sentence reduction. ECF No. 1625-1 at 17; ECF No. 1632 at 2.[2] The parties further agree that a sentence reduction is appropriate in Defendant's case, but they disagree on the extent of such a reduction. *Id.* Defendant requests a reduced sentence of time served, while the Government requests a reduced sentence longer than time served, but of course, less than life. *Id.*

---

[2] *See also United States v. McSwain*, 25 F.4th 533, 538 (7th Cir. 2022) (holding that when a defendant has been sentenced in a multi-drug conspiracy, if one of the drugs subject to the conspiracy constitutes a covered offense and triggers a lower statutory penalty range, but another does not, the defendant is still eligible for relief under the First Step Act).

Case 2:04-cr-00285-JPS   Filed 10/20/22   Page 3 of 21   Document 1640

### 2.2    Compassionate Release

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020).

Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No.

1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13). The Court will also consider whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). *Id.* § 1B1.13(B)(2). After determining eligibility, and prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A).

The Government contests the applicability of Section 3582(c)(1)(A). Specifically, the Government argues that controlling Seventh Circuit precedent has rejected Defendant's first argument in support of compassionate release: that, *inter alia*, intervening changes in the law and the draconian nature of his original sentence constitute "extraordinary and compelling" reasons warranting compassionate release. The Government additionally disputes Defendant's second argument regarding his medical circumstances and the COVID-19 pandemic, arguing that such factors do not rise to the level of "extraordinary and compelling."

3.     ANALYSIS

    3.1     Section 404 – Sentencing Parameters

The Court begins with the sentencing parameters. When considering sentence-reduction motions under the First Step Act, courts' discretion "must be informed by a calculation of the new sentencing parameters." *United States v. Blake*, 22 F.4th 637, 641 (7th Cir. 2022); *see also United States v. Corner*, 967 F.3d 662, 666 (7th Cir. 2020) (courts must "first determin[e] the parameters of what [they] *could* do" before determining "what to do") (emphasis in original). First, as to the sentencing guidelines, even under the Fair Sentencing Act, the guideline range of 360 months to life as calculated

and applied at Defendant's May 2007 sentencing remains unchanged. ECF No. 1632 at 2; ECF No. 1078 at 1. Specifically, at the time of Defendant's original sentencing, Defendant's base offense level was 38, with a two-level enhancement for possession of a firearm, and an additional two-level enhancement for his role in the offense, for a total offense level of 42, and a criminal history category score of VI based on 14 criminal history category points. ECF No. 1619 at 44, 136; ECF No. 1078. The Fair Sentencing Act decreases Defendant's base offense level by two points, for a total offense level of 40. ECF No. 1632 at 8 n.4. A total offense level of 40, combined with a criminal history category score of VI, still results in a guidelines range of 360 months to life.

The Court next turns to the applicable statutory range, on which the parties agree. While the amount of crack for which Defendant was adjudged guilty—50 or more grams—carries a lower base statutory range following the Fair Sentencing Act, the amount of powder cocaine for which Defendant was adjudged guilty—5 or more kilograms—does not. The latter still falls under 21 U.S.C. § 841(b)(1)(A) and carries a base statutory range of 10 years to life. The parties further agree that "today, a mandatory minimum sentence of life in prison would not be required"; "[i]nstead, the mandatory minimum sentence would be [the base statutory range of] just ten years." ECF No. 1632 at 8; *see also* ECF No. 1625-1 at 14. In support of its agreement thereto, the Government concedes that the two prior felony convictions, which served as the predicates for Defendant's mandatory minimum sentence of life imprisonment (and the Government's Section 851 enhancement, ECF No. 833), no longer qualify as predicates. ECF No. 1632 at 8. This is so because either the law has changed and applies retroactively, or where it has changed and does not apply retroactively, the Court is still

required to consider those changes under *Concepcion v. United States*, 142 S.Ct. 2389, 2404 (2022). *Id.*; *see also* the Court's contemporaneous decision as to co-Defendant Calvin James at 6–13.

### 3.2   Section 404 – Section 3553(a) Factors

If a defendant is eligible for relief on a Section 404 motion, and once the court has determined the sentencing parameters, courts then assess whether a reduction is appropriate by undertaking a "complete review" of a defendant's case for relief. Pub. L. No. 115-391, 132 Stat. 5194, § 404(c); *see also United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020). "[C]omplete review" may include consideration of the sentencing factors listed in 18 U.S.C. § 3553(a); indeed, "doing so makes good sense." *Shaw*, 957 F.3d at 736. The Section 3553(a) factors include: (1) the nature and circumstances of the offense, and the history and characteristics of Defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense.

The Government rests its argument against reduction to a sentence of time served upon the Section 3553(a) factors. ECF No. 1632 at 7. The Government focuses in particular on Defendant's disciplinary infractions while in prison, which "mostly involv[e] weapons." *Id.* at 8. The Court's independent review of Defendant's prison disciplinary records confirms the Government's assertion; Defendant has had several disciplinary infractions for possession of a weapon, as well as possession of drugs and narcotics, which were found within his cell. ECF No. 1632-2. The most

recent weapon possession infraction occurred in approximately 2019, and the most recent drugs and narcotics possession infraction occurred in approximately 2021. *Id.* The Government additionally points out that, at the time of his original sentencing, Defendant had a significant criminal history and had a criminal history score of VI even without the enhancement for being a career offender. ECF No. 1632 at 8.

Moreover, the Government explains, Defendant joined the Cherry Street Mob at a young age and played a large role in protecting the mob's territory and serving as a mob enforcer. *Id.* at 9. Indeed, the presentence report concludes that 11.7 kilograms of crack cocaine could be attributed to Defendant. *Id.* While the offense of conviction is non-violent, the presentence report indicates that Defendant employed firearms during his participation with the Cherry Street Mob's drug-trafficking activities. *Id.*

On the factors regarding the need for a sentence to provide just punishment and to avoid unwarranted sentence disparities, the Government notes that a sentence of time served would be a more than 40% discount from the bottom of the advisory guidelines range of 360 months to life. *Id.* at 9. According to the Government, this is the sort of reduction that is given for cooperation. *Id.* While Defendant (and co-Defendant Calvin James) are the only two defendants still in prison in this case, the Government observes that both men did not cooperate and opted for trial. *Id.* On this point, the Government contends that co-Defendant Calvin James, "whose Section 404 motion is also pending before the Court and whose advisory guideline range is the same" constitutes "a seemingly comparable co-defendant"; conversely, comparing Defendant to other defendants in this case (besides Calvin James) "invites the 'apples and oranges' problem." *Id.* at 10.

At the time of Defendant's original sentencing, the Court commented that a life sentence, on the facts before it, was "draconian." ECF No. 1078 at 2. The Court explained at the sentencing hearing that Defendant's objections at the time related to matters determined by the legislative branch and that were outside the Court's province. *Id.* The Court further stated that, if it had discretion, a sentence of approximately 30 years (or 360 months, as was imposed upon co-Defendant Calvin James) "would be appropriate"; however, the Court had no such discretion in light of the then-applicable mandatory minimum life sentence. *Id.* The Court finally commented on the fact that Defendant was receiving a life sentence despite his young age, and on the fact that both of his predicate offenses occurred when he was 19 and involved only "a year in custody in the state courts." *Id.* On these comments, the Government argues that, at the time, a life sentence "may indeed have been 'draconian,' but a very substantial sentence was (and is) needed to promote just punishment, respect for the law, [] deterrence, and to protect the public." *Id.*

Conversely, Defendant presents myriad arguments in line with the Section 3553(a) factors that he argues counsel for a reduction to a sentence of time served. As outlined in the presentence report, Defendant explains that he was forced to mature and serve in a paternal role for his siblings at a young age. ECF No. 1625-1 at 9. He further began to experiment with alcohol and illicit substances at a young age, which prevented him from completing high school or maintaining steady employment. *Id.* Defendant explains that his addiction changed the course of his life, landing him in state court for two drug charges (the charges that served as the predicates for his Section 851 enhancement at the time of his original sentencing). *Id.* at 10. When Defendant was released from state custody, he tried to turn his

life around, enrolling in drug counseling treatment and training to work as a butcher. *Id.* However, his drug addiction continued, which led to his participation with the Cherry Street Mob and the charges underlying this case. *Id.*

Defendant explains that the Cherry Street Mob conspiracy included conduct that ranged from 1988 to 2004. *Id.* at 11. Defendant was only five years old when the conspiracy began, and thus was not involved with it as long as his co-defendants were. *Id.* Moreover, he was categorized as a mid-level distributor in the presentence report and was "not among the most culpable members of the 29-person conspiracy, yet he is the only member facing a life sentence and only one of two still incarcerated," along with co-Defendant Calvin James. *Id.* at 11, 14. In response to the Government's arguments regarding the advantages of cooperation, Defendant notes that those advantages have borne out; there is no one else to motivate to cooperate, and no further benefits that could come from cooperation. ECF No. 1635 at 6.

Defendant urges the Court to recognize, as it must under *Concepcion*, the changed legal landscape since his original sentencing. ECF No. 1625-1 at 12. First, he explains, even following enactment of the Fair Sentencing Act and the First Step Act, political actors now agree that crack is not more dangerous than cocaine, and that offenses involving the two should be treated equally.[3] *Id.* He also notes that it is now widely accepted that non-violent drug offenses should not be penalized with life imprisonment. *Id.* As to his case, Defendant explains the resulting gross disparity both

---

[3] The EQUAL Act of 2021 has passed the House of Representatives and is currently before the Senate. H.R. 1693, 117th Cong. (2021–2022).

between his and his co-defendants' sentences, as well as the gross disparity between his sentence and the mandatory minimum of 10 years that he would receive today, as well as the fact that drug offenders today almost never receive life sentences. *Id.* at 12 – 13 (citing *United States v. Kratsas*, DKC 92-0208, 2021 WL 242501, at *4 (D. Md. Jan. 25, 2021) ("A defendant today would certainly not face a mandatory life sentence. No one does for a drug offense."); *United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 504 (S.D. Iowa 2020) ("Defendant's life sentence for low-level, non-violent drug trafficking would be laughable if only there was not a real person on the receiving end.")). Consequently, he argues, as his sentence is a relic of a bygone era, a sentence longer than time served would not serve as a lesson in deterrence to others. *Id.* at 23. In the same vein, the costs spent to incarcerate him can and should be put to better use. *Id.* at 24.

As to his rehabilitation, Defendant explains that he is now a reflective and remorseful middle-aged man. *Id.* at 13. He states that he is ready to contribute to his community and is not the same man that the Court sentenced back in 2007. *Id.* He attributes his disciplinary infractions in prison to the despair and lack of hope he felt given his receipt of a life sentence. *Id.* at 14. Notwithstanding these infractions, he has recently developed a close relationship with his now-adult children, who have encouraged him to retain hope and engage in programming at his facility. *Id.* With their support, Defendant earned his GED while serving his sentence. *Id.* Defendant hopes to one day work with the Boys and Girls Club to mentor children and help put them on the right path, which he hopes can help others learn from his mistakes. *Id.* He maintains that his instant offense was non-violent, he has never been convicted of a violent felony, and that he will not pose a danger to society, particularly given his term of

supervised release. *Id.* at 22. Defendant additionally welcomes the Court to order him to enroll in a drug-treatment program to prove that "his addiction no longer dictates his conduct." *Id.*

Finally, Defendant submits a plethora of character letters and letters of support with his motion, and explains that, if released, he will move in with his mother in Milwaukee. *Id.* at 24. Defendant's mother recently lost her vision and Defendant will be able to assist her. *Id.* Alternatively, Defendant's brother and aunt have each offered to house him, and both his aunt and cousin have offered him full-time employment at their salon and healthcare businesses, respectively. *Id.* Defendant maintains a close relationship with his grandmother, who is a retired social worker. ECF No. 1625-2 at 11. Defendant is also working to obtain his commercial driver's license. ECF No. 1625-1 at 24. Defendant's counsel has secured on his behalf a commitment from the Wisconsin Community Services organization that it will "provid[e] [Defendant] with reintegration services upon his release." *Id.* at 25.

The Court is persuaded that a sentence reduction is appropriate in light of the intervening changes in the law, which changes affect the sentencing parameters before it as explained above, coupled with the intervening changes in fact presented by the parties. The Court further determines that it has sufficient information before it to analyze anew both the sentencing parameters as well as other factors, including the Section 3553(a) factors, to give it a "complete review" of Defendant's case. Thus, a hearing is not required; indeed, neither party requests one, with Defendant noting that he would welcome the chance for a hearing but would prefer a timely written decision over the delay that a hearing would cause. *United States v. Hamilton*, 780 Fed. App'x 824, 826 (7th Cir. 2020); *see also United*

*States v. Fowowe*, 1 F.4th 522, 530 (7th Cir. 2021); ECF No. 1635 at 5; ECF No. 1632 at 10.

After analyzing such intervening changes in law and fact, the Court determines that a reduced sentence, especially in light of the 17 years Defendant has already spent in prison, will reflect the seriousness of his offense, adequately deter him from future criminal conduct, and protect the public. The law has come a long way since Defendant was sentenced in 2007. Congress and the judiciary have now reached the conclusion to which the Court has alluded regarding the draconian nature of a mandatory life sentence for conduct such as Defendant's. The Court is wary of Defendant's ongoing prison infractions, including the involvement of weapons, but understands and appreciates the effect that a lack of hope can have on a person.

Defendant's recent efforts to better himself, with the assistance of his family, are promising, as is the fact that Defendant has secured a home in Wisconsin, opportunities for gainful employment, and welcomes modifications to his conditions of supervised release to require drug treatment. The fact that Defendant's mandatory minimum is now significantly below the guidelines range further supports a reduction in sentence. Thus, upon consideration of all the factors before it, the Court concludes that the only fair, just, and reasonable conclusion is to reduce Defendant's sentence to a total term of 288 months' imprisonment (of which he has already served approximately 17 years) to be followed by five years' supervised release.

### 3.3 Compassionate Release

Defendant argues that the disparity between the life sentence he received in 2007 and the sentence he would receive today constitutes an

extraordinary and compelling circumstance warranting his compassionate release under Section 3582(c)(1)(A). ECF No. 1625-1 at 12. Such extraordinary and compelling circumstance, he argues, is then supported by the Section 3553(a) factors set forth above. *Id.* Specifically, Defendant contends that the sentencing disparity constitutes an extraordinary and compelling circumstance because (1) his sentence is grossly disparate from the sentences imposed on his co-defendants, (2) it is grossly disparate from the sentence he would receive today, and (3) it is grossly disparate because drug offenders today almost never receive life sentences, and certainly not mandatory life sentences. *Id.*

As an additional extraordinary and compelling circumstance warranting his compassionate release, Defendant proffers the COVID-19 pandemic. *Id.* at 25. He argues that his gender, race, and moderate-to-severe asthma render him more susceptible to COVID-19 than other individuals. *Id.* Defendant's asthma qualifies him as a Care Level 2 inmate, which is defined as a "stable outpatient[] who require[s] clinician evaluations monthly to every 6 months." *Id.* at 19 n.14 (citing Federal Bureau of Prisons, Clinical Guidance, Care Level Classification for Medical and Mental Health Conditions or Disabilities, *available at* https://www.bop.gov/resources (last visited Oct. 18, 2022). Defendant receives medication four times per day to treat his asthma. *Id.* at 19. In December 2020, Defendant contracted COVID-19 and continues to experience long-term effects of the infection. *Id.* However, he has since been vaccinated, though not boosted, notwithstanding that his asthma still places him at severe risk. *Id.* at 20.

In response to Defendant's first argument, the Government argues, and supplements its briefing with two letters of supplemental authority on this point, that changes in the law do not constitute extraordinary and

compelling circumstances warranting compassionate release under Section 3582(c)(1)(A). ECF No. 1632 at 17; ECF Nos. 1633, 1636. Indeed, in *United States v. Brock*, the Seventh Circuit explicitly held that changes wrought by intervening case law as to what qualifies as a Section 841 predicate offense supporting a Section 851 enhancement do not qualify as extraordinary or compelling reasons warranting compassionate release. 39 F.4th 462, 465 (7th Cir. 2002) ("Our decision in *Ruth*—even if viewed as announcing new law or a new interpretation of an existing statutory provision—cannot alone constitute an 'extraordinary and compelling' reason authorizing a reduced sentence under § 3582(c)(1)(A).") (citing *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020) (holding that state drug statute was overbroad as compared to federal drug statute and therefore did not qualify as a Section 841predicate supporting a Section 851 enhancement)). Because intervening case law, including *Ruth*, is part of the reason why Defendant's sentencing parameters have changed and the disparity was created and/or exacerbated, the Government's argument goes, *Brock* precludes a sentencing disparity argument as an extraordinary and compelling reason warranting compassionate release.

Defendant contends that *Brock* is inapplicable because he does not argue that intervening case law *alone* constitutes an extraordinary and compelling reason warranting compassionate release, but that his "flawed and draconian mandatory minimum sentence of life imprisonment" also does. ECF No. 1635 at 8. Moreover, unlike the defendant in *Brock* who faced an enhancement of 10 years, Defendant received a mandatory minimum of life imprisonment, "a sentence entirely different in kind to any term of years, which makes [Defendant's] circumstances extraordinary and compelling." *Id.* However, while certainly draconian, the basis for the

original sentence and the reason why that basis no longer exists today are due to both intervening case law and intervening legislative changes. *Brock*, as well as the Seventh Circuit's prior decision in *United States v. Thacker* and more recent decision in *United States v. King* all indicate that any intervening change in the law—whether legislative or judicial—is not extraordinary and compelling to warrant compassionate release. *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) (Section 3582(c)(1)(A) "cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in" other statutes); *Brock*, 39 F.4th at 466 ("The district court saw the limitations recognized in *Thacker* as having no application where the change in law animating a compassionate release motion comes not from Congress, but from decisions by courts. We cannot agree."); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) ("There's nothing 'extraordinary' about new statutes or caselaw.").

The *King* court explicitly noted that its holding in no way affects the district court's ability—and obligation—to consider intervening changes in the law when considering Section 404 motions in light of *Concepcion*. *Concepcion* obligates a district court to consider intervening changes in the law when raised by the parties in a Section 404 motion. 141 S.Ct. 1458. On the other hand, the *Thacker*, *Brock*, and *King* holdings preclude eligibility for compassionate release under Section 3582(c)(1)(A) based solely on intervening changes in the law. Consequently, as to Defendant, the distinction is academic because the Court has already considered and afforded Defendant relief under Section 404; such decision is based on and involves the Court's consideration of intervening changes in the law, including those raised by Defendant as warranting compassionate release.

This final point distinguishes Defendant's case from the defendant in *United States v. Liscano*, No. 02-CR-719-16, 2021 WL 4413320, at *4–5 (N.D. Ill. Sept. 27, 2021). *See* ECF No. 1625-1 at 24 (arguing similarity between Defendant's case and *Liscano*). There, the court held that "the government's admission that Liscano's predicates no longer support his sentence makes this case extraordinary," particularly as the admission concerned the defendant's life sentence. *Liscano*, 2021 WL 4413320, at *4–5. In *Liscano*, the predicate offenses both involved possession of small amounts of controlled substances resulting in only a few months spent in prison. As Defendant notes, the case is remarkably similar to Defendant's. And, like the court in *Liscano*, this Court as well has rarely if ever confronted a set of facts—that is, predicate offenses involving small amounts of drugs and low jail time, that nonetheless led to a statutory mandatory life sentence—as mismatched and overly punitive as those here.

However, in *Liscano*, compassionate release under Section 3582(c)(1)(A) was the only viable mechanism for relief that the parties presented. Without affording relief, the defendant would have "no release date, no light at the end of the tunnel, no future to consider." *Id.* at *4. Not only did *Brock* expressly overrule *Liscano*'s holding that "the government's 'admission that the [defendant's] offenses no longer support a life sentence' because of subsequent developments in the law could constitute an extraordinary and compelling reason for purposes of § 3582(c)(1)(A)," but the Court here has already afforded Defendant relief through his Section 404 motion, which decision required consideration of the intervening changes in the law that Defendant proffers in support of compassionate release. *Brock*, 39 F.4th at 465–66 (quoting *Liscano*, 2021 WL 4413320, at *8). Thus, the Court is not persuaded by Defendant's first argument in support

of compassionate release. *See also, e.g.*, *United States v. Arojojoye*, 806 F. App'x 476, 477–78 (7th Cir. 2020) (rejecting argument that unwarranted sentence disparities constitute "extraordinary and compelling" reasons to justify compassionate release or a sentence reduction).

Nor is the Court persuaded by Defendant's second argument regarding COVID-19. The outbreak of COVID-19, together with underlying medical conditions that place a defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting release. *See, e.g.*, *United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020).

In the past year, the risk calculus has changed significantly given the introduction of several very effective and increasingly widely available vaccines that inoculate against COVID-19. Importantly, on August 23, 2021, after rigorous and thorough evaluation, the Food and Drug Administration approved the Pfizer-BioNTech COVID-19 vaccine for all individuals aged 16 years and older.[4] Other vaccines, including the Moderna vaccine, have been approved for emergency use since late 2020, with great success.[5]

It quickly became the law in the Seventh Circuit that, "for most prisoners[,] the availability of vaccines for COVID-19 'makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.'" *United States v. Sullivan*, No. 20-2647, 2021

---

[4]FDA News Release, U.S. Food & Drug Admin., FDA Approves First COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

[5]*See* U.S. Food & Drug Admin., Moderna COVID-19 Vaccine, https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine (updated Aug. 18, 2021).

WL 3578621, at *2 (7th Cir. Aug. 13, 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)); *see also United States v. Burgard*, No. 20-3210, 2021 WL 3781384, at *2 (7th Cir. Aug. 26, 2021); *United States v. Eveland*, No. 20-3449, 2021 WL 3414202, at *1 (7th Cir. Aug. 5, 2021); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). Still though, in the past few months, the Seventh Circuit has instructed district courts to take a deeper dive:

> We close with an observation about COVID-19 vaccines in the context of requests for compassionate release. The government points to our language in *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021), in which we said that the availability of vaccines had effectively eliminated the risks of COVID-19 to most federal prisoners. But that opinion was handed down before Omicron became the dominant variant in this country (with an increase in breakthrough infections among the fully vaccinated). And it included a safety valve for prisoners to show that they are unable to receive or benefit from a vaccine, or that they remain vulnerable to severe infection, notwithstanding the vaccine. *Id.* Recent events underscore the need for a district court's opinion to leave us assured that it considered the applicant's individualized arguments and evidence.

*United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022).

An individualized look at Defendant's case instructs that compassionate release is not appropriate on this basis. While Defendant's vaccination status does not immediately eliminate him from consideration for early release, it certainly underscores it. Further, the Omicron wave referenced in *Rucker* seems to be well at its end[6] (although the Court is certainly cognizant that another variant may soon emerge). The Court does not find that Defendant's age or gender place him any further at risk. If they

---

[6] *Coronavirus in the U.S.: Latest Map and Case Count*, New York Times (Mar. 10, 2022), https://www.nytimes.com/interactive/2021/us/covid-cases.html.

did, a large portion of the federal inmate population would be eligible for compassionate release. Other than Defendant's asthma, which he treats with medication, Defendant does not suffer from any health conditions that place him at an increased risk of severe disease if he were to contract COVID-19. For example, Defendant does not appear to have a severely weakened immune system. Further, vaccination at the Lee USP, where Defendant is housed, is well underway, which will likely prevent any further large-scale COVID-19 waves, and there are currently no active inmate cases of COVID-19.[7]

Consequently, Defendant has not presented an extraordinary and compelling reason warranting release. Again, however, as explained above, the Court will afford Defendant relief by way of Section 404, and such decision is based on and includes consideration of the intervening changes in the law that Defendant proffers in support of compassionate release.

### 4. CONCLUSION

In light of the foregoing, the Court will grant Defendant's motion for a reduction in his sentence pursuant to the First Step Act. Defendant's sentence shall be reduced to a total term of 288 months' imprisonment (of which he has already served approximately 17 years) to be followed by five years' supervised release.[8]

---

[7]Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Oct. 18, 2022).

[8]In its forthcoming amended judgment, the Court updates Defendant's conditions of supervised release, as written in the Court's judgment, dated May 16, 2007, ECF No. 1079, to comport with current Seventh Circuit case law. The Court also modifies some conditions of release in light of Defendant's current circumstances. Finally, the amended judgment will reflect that Defendant has paid the special assessment and restitution imposed in his original judgment, ECF No. 1079 at 5, in full.

Accordingly,

**IT IS ORDERED** that Defendant Jarvis King's motion for a reduction in his sentence pursuant to the First Step Act, ECF No. 1625, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Jarvis King's motion to seal, ECF No. 1624, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Government's motion to seal, ECF No. 1631, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Jarvis King's sentence be reduced to a total term of 288 months' imprisonment (of which he has already served approximately 17 years) to be followed by five years' supervised release; and

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to implement Defendant Jarvis King's reduced term of imprisonment and term of supervised release pursuant to the amended judgment that follows.

Dated at Milwaukee, Wisconsin, this 20th day of October, 2022.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge